AO 91 (Rev. 11/11) Criminal Complaint                                       AUSA Rajnath Laud (312) 469-6306

FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MAY 1 2 2020

UNITED STATES OF AMERICA

v.

YEN CHAM YUNG

CASE NUMBER:
**UNDER SEAL**

THOMAS G. BRUTON
CLERK, U.S DISTRICT COURT

20 CR 231

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. From on or about May 7, 2009 to on or about September 5, 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 641 | retained, without authorization, property of the United States Government, namely, unclassified FBI documents, magnetic and electronic media, and photographic equipment valued in excess of $1,000, with intent to convert it to his own use, knowing it to have been embezzled, stolen, purloined, and converted |
| Title 18, United States Code, Section 793(e) | had unauthorized possession of and willfully retained a document, writing, and note relating to the national defense, namely a memorandum of understanding between two agencies of the U.S. intelligence community ("Document A") |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

s/David A. Patch
DAVID A. PATCH
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: May 12, 2020

_Judge's signature_

City and state: Chicago, Illinois

ROBERT M. DOW, JR., U.S. District Judge
_Printed name and title_

UNITED STATES DISTRICT COURT    )
                                             )
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, David A. Patch, being duly sworn under oath, state as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation, United States Department of Justice, and have been so employed for approximately twenty-one years. I am currently assigned to the Organized Crime/Criminal Enterprise Squad of the Chicago Division of the FBI. As part of my official duties, I investigate criminal violations of federal laws.

2.    This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Complaint charging that YEN CHAM YUNG retained, without authorization, property of the United States Government, namely, unclassified FBI documents, magnetic and electronic media, and photographic equipment valued in excess of $1,000, with intent to convert it to his own use, knowing it to have been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641, and that YEN CHAM YUNG had unauthorized possession of and willfully retained a document, writing, and note relating to the national defense, namely a memorandum of understanding between two agencies of the U.S. intelligence community ("Document A") in violation of Title 18, United States Code, Section 793(e).

3.    The information in this Affidavit is based upon interviews of witnesses, my own observations and actions, information received from other law enforcement

agents and officers, my experience and training, and the experience and training of other agents and officers, information from confidential sources, a review of certain personnel records maintained by the FBI as well as a review of physical evidence seized by law enforcement. Because this Affidavit is being submitted for the limited purpose of securing a Criminal Complaint as more fully described below, I have not included each and every fact known to me concerning this investigation. More specifically, I have set forth only the facts that I believe are necessary to establish probable cause to support the requested Criminal Complaint.

## I.   BACKGROUND ON CLASSIFIED INFORMATION

4.   Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information is classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL." National security information is information owned by, produced by, produced for, and under the control of the United States government that is classified as follows:

5.   Information is classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify and describe.

6.   Information is classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the

2

national security that the original classification authority was able to identify and describe.

7.    Information is classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify and describe.

8.    Access to national security information classified at any level could be further restricted through compartmentation in Sensitive Compartmented Information ("SCI") categories.    Only individuals with the appropriate security clearance and additional SCI permissions could have authorized access to such classified national security information.

9.    Information classified at any level can only be lawfully accessed by persons determined by an appropriate United States government official to be eligible for access to classified information, who has signed an approved non-disclosure agreement, who received a security clearance, and who has a "need to know" the classified information.    Classified information can only be stored in an approved facility and container.

10.    Furthermore, I also am familiar with how items, such as digital storage devices and magnetic media disks, utilized by the United States Government, particularly by the FBI, are issued, marked and handled as well as how reports, memorandum and emails, among other similar items, are generated in the course of

3

official duties and for which are considered property of the United States Government.

11.    As explained below, law enforcement has recovered certain digital storage devices, computer disks, magnetic floppy disks as well as documents and other items believed to be property of the United States Government, to include items classified as SECRET. These materials are believed to have been obtained by YEN CHAM YUNG, during the course of his employment as a Special Agent with the FBI, but which were retained following YEN CHAM YUNG's separation from employment with the FBI in or about July of 2016.

## II.    FACTS SUPPORTING PROBABLE CAUSE

12.    An individual, hereinafter identified as Individual A,[1] advised law enforcement that in approximately 1985, Individual A met YEN CHAM YUNG while both were in or around the state of Virginia. In approximately 1987, Individual A and YEN CHAM YUNG married one another.

13.    A review of certain FBI records pertaining to YEN CHAM YUNG revealed that on or about April 14, 1996, YEN CHAM YUNG entered on duty as a Special Agent with the FBI. Records further reflect that while employed with the FBI, YEN CHAM YUNG was, at various times, assigned to FBI offices located in Chicago, Honolulu, Washington, D.C. as well as in Jakarta, Indonesia. In addition,

---

[1] Information regarding the relationship between Individual A and YEN CHAM YUNG that may be relevant to evaluating Individual A's credibility is contained in the affidavit submitted in support of the search warrant numbered 19 M 612. That information is hereby incorporated by reference.

4

at times, YEN CHAM YUNG was assigned as the FBI's liaison to the Department of Defense's United States Northern Command located in Colorado Springs, Colorado. These records further reflect that YEN CHAM YUNG appeared to have retired from the FBI on or about July 31, 2016.

14.     In the course of YEN CHAM YUNG's employment with the FBI, he obtained a Top Secret clearance.  In addition to his Top Secret clearance, YEN CHAM YUNG maintained access to secure compartment information ("SCI").

15.     Because YEN CHAM YUNG held a security clearance, the U.S. government entrusted him with access to sensitive government materials, including information relating to the national defense that was closely held by the government ("National Defense Information") and classified documents and materials.

16.     Throughout his career, as a prerequisite to his access to classified information, YEN CHAM YUNG signed numerous non-disclosure forms in which he acknowledged both the harm that could result from the unauthorized disclosure of classified information and the applicability of criminal sanctions, including Title 18, United States Code, Section 793, should YEN CHAM YUNG make unauthorized disclosures of such information.

17.     On or about August 20, 2015, YUNG signed a FBI security form (Standard Form 312 or "SF-312").  The SF-312 form is a Sensitive Compartmented Information Nondisclosure Agreement and contains a Security Debriefing Acknowledgement which is executed when an employee of the United States

5

Government, to include the FBI, no longer has a security clearance and consequently loses the ability to access and possess classified property of the United States Government. The Security Debriefing Acknowledgement portion of the SF-312 contains the following statement, "I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have)(have not)(strike out inappropriate word or words) received a security debriefing."

18. Based upon Affiant's review of the SF-312 executed on or about August 20, 2015, by YEN CHAM YUNG, and through Affiant's consultation with FBI security personnel, YEN CHAM YUNG would not have authority to be in possession of any classified information after August 20, 2015.

19. On or about August 21, 2019, an individual, hereinafter identified as Individual B,[2] advised law enforcement that Individual A had obtained a court ordered temporary order of protection from YEN CHAM YUNG. Further, Individual B advised law enforcement that in connection with her separation from YUNG,[3]

---

[2] Individual B is a child of Individual A.

[3] Greater detail is provided in the affidavit in support of search warrant 19 M 612, incorporated by reference above.

6

Individual A and friends known to Individual A subsequently began to search YEN CHAM YUNG's and Individual A's residence ("Residence A"), located in Colorado Springs, Colorado, for documents related to their separation.

20.    On or about September 4, 2019, Individual B advised law enforcement that Individual B had received a shipped box containing numerous digital storage devices, documents and other items which Individual A and friends known to Individual A had located at Residence A and shipped to Individual B. Individual B advised law enforcement that one of the digital storage devices, a USB drive, was labeled as being property of the United States Government and contained a classification marking of Unclassified. Individual B advised law enforcement that Individual B was concerned about being in possession of such items and others Individual A found in the residence.

21.    On or about September 5, 2019, Individual B provided to law enforcement a United States Postal Service box which appeared to have been mailed on or about August 26, 2019 and which was addressed to Individual B. At that time, law enforcement took custody of the box and contents which included approximately 35 digital storage devices, one 3.5" magnetic floppy disk, a Samsung mobile telephone, a camera, miscellaneous notebooks and documents, hereinafter identified as Document Set 1, among other items.

22.    On or about September 6, 2019, Individual B advised law enforcement that Individual B had traveled to Colorado Springs, Colorado to provide support for

Individual A, who was seeking to pursue a separation and potential divorce from YEN CHAM YUNG. Further, Individual B advised that searches of Residence A by Individual A and friends known to Individual A had revealed a USB drive and a computer disk, both which were marked property of the United States Government and SECRET.

23. On September 7, 2019, Affiant and other law enforcement personnel traveled to Colorado Springs and met with Individual A and Individual B. At that time, Individual A advised law enforcement that Individual A was never employed by the United States Government. Individual A stated that no one apart from Individual A and YEN CHAM YUNG resided at Residence A.

24. While meeting with Individual A, Individual A provided to law enforcement numerous items which Individual A stated had been located inside Residence A by Individual A and friends known to Individual A. Individual A advised law enforcement that Individual A was very concerned about the nature of the items located inside Residence A, to include property which appeared to belong to the United States Government. The items provided by Individual A to law enforcement included, but were not limited to, a USB drive marked "U.S. Government Property" and SECRET; a computer disk with an affixed sticker identifying the disk as "U.S. Government Property" and SECRET; five 3.5" magnetic floppy disks with affixed stickers identifying the disks as "U.S. Government Property" and UNCLASSIFIED; a Department of Defense identification card issued to YEN CHAM YUNG; a Peterson

Air Force Base Entry Control Card issued to YEN CHAM YUNG; and miscellaneous documents and notebooks, identified hereinafter as Document Set 2.

25.    On September 8, 2019, Affiant and other law enforcement personnel again met with Individual A and Individual B.  At that time, Individual A provided additional paper documents, hereinafter identified as Document Set 3. Among these paper documents were additional items, some of which were marked as UNCLASSIFIED and some of which were marked as SECRET.

26.    On or about September 13, 2019, United States Magistrate Judge Sunil R. Harjani, Northern District of Illinois, signed search warrant 19 M 612, which authorized the search of (a) 42 digital storage devices, including universal serial bus ("USB") drives, commonly referred to as USB thumb drives or flash drives, secure digital ("SD") memory cards and digital disks (CDs/DVDs); (b) six 3.5" magnetic floppy disks;  (c) a Samsung mobile telephone; and (d) a FujiFilm Finepix Digital Camera with a 4GB SD memory card; and (e) Documents Sets 1, 2, and 3, which represented some of the items received by law enforcement from Individual B on or about September 5, 2019, and from Individual A on or about September 7 and 8, 2019.

27.    During the search authorized by warrant 19 M 612, the FBI located at least fourteen documents that contained markings indicating that they were the property of the United States government and classified SECRET.  Based upon their contents, the documents appear to relate to the time period extending between approximately 1997 and 2015, and appear to relate to matters on which YEN CHAM

9

YUNG worked and coordinated, including counterintelligence, counterproliferation and drug trafficking. Further, some of the documents marked SECRET related to matters regarding the FBI's use of tradecraft, and specifically undercover agents.

28.     The aforementioned documents marked SECRET were submitted for forensic analysis to determine whether any fingerprints were present. Analysis was conducted of a two page document and envelope, which were attached by a staple. The document was dated March 10, 1997 and marked SECRET. The document contained sensitive information relative to certain aspects of the FBI's use of undercover agents and the front page of the document contained the handwritten notation, "Yung" and "Copy", among other notations. Pursuant to the above described forensic analysis, a fingerprint identified as that of YEN CHAM YUNG was present on the aforementioned envelope which had been stapled to the two page document.

29.     In addition, forensic analysis was conducted on a printout of an eight page FBI email thread, marked SECRET, in which YEN CHAM YUNG was a participant and which covered time periods between approximately November and December of 2014. Pursuant to the above described forensic analysis, a fingerprint identified as that of YEN CHAM YUNG was present on page eight of the printed document.

30.     Pursuant to warrant 19 M 612, the above described digital and magnetic storage devices have been submitted for forensic analysis. A preliminary review of a limited number of these items has revealed the presence of materials that appear to

be property of the United States government, including certain Microsoft Power Point presentations marked SECRET.

31.   On or about September 14, 2019, Individual A provided to law enforcement, among other items, (a) nine digital media/storage devices; (b) eleven mobile telephones; (c) nine laptop computers, computer/tablet-like devices and wifi enabling devices; (d) thirty-four magnetic media storage tapes; and (e) miscellaneous documents, hereinafter identified as Document Set 4; which represented additional materials Individual A and others had located in Residence A.

32.   Among the documents contained in Document Set 4 was an unclassified FBI report, documenting a sensitive security interview, conducted in Chicago, of an FBI employee who was assigned to the Chicago Division at the time.  This interview was conducted during the time frame when YEN CHAM YUNG was assigned to the Chicago Division of the FBI.

33.   Further, Affiant has reviewed labels, containing handwritten notations, which were present on two magnetic mini-DV cassette tapes, respectively, which were provided by Individual A on September 14, 2019.  This review revealed that the notations were consistent with an FBI file number associated with an Asian gang or Asian organized crime investigation conducted by the Honolulu Division in approximately 2000.  Based upon Affiant's training and experience and the handwritten notations on the labels, Affiant believes that the referenced magnetic

11

tapes may contain video footage of physical surveillances conducted in support of an FBI investigation in or about 2000.

34.     In addition, of items provided to law enforcement by Individual A on September 14, 2019, a magnetic floppy disk was observed which had an affixed label indicating that the disk was property of the United States Government and UNCLASSIFIED.

35.     On or about September 25, 2019, United States Magistrate Judge Sidney I. Schenkier, Northern District of Illinois, signed search warrant 19 M 655, which authorized the search of (a) nine digital media/storage devices; (b) eleven mobile telephones; (c) nine laptop computers, computer/tablet-like devices and wifi enabling devices; (d) thirty-four magnetic media storage tapes; and (e) Document Set 4.

36.     During the search authorized by warrant 19 M 655, the aforementioned FBI report, documenting a sensitive security interview, conducted in Chicago, of an FBI employee who was assigned to the Chicago Division at the time was identified and fully reviewed. Further, additional documents, to include numerous printouts of FBI email threads, marked UNCLASSIFIED, were located. Forensic analysis of the digital, magnetic, computer and telephone related items, as authorized by warrant 19 M 655, is still pending.

37.     Among the items found in Document Set 2 was a document marked "SECRET," which was a "Memorandum of Understanding" between the FBI and CIA

regarding the activities of those agencies overseas and domestically (Document A). Document A was imaged by the FBI, and the images were reviewed by both an FBI classification authority and a CIA classification authority, both of whom determined that the memorandum contained classified national defense information, up to and including SECRET information.[4]

38.     According to records maintained by the FBI, on May 7, 2009, while he was assigned to the Chicago Division of the FBI, YEN CHAM YUNG accessed a document titled "CIA-FBI MOU SIGNED FINAL_JULY 2005.pdf" from a secure FBI computer system.[5] According to records maintained by the FBI, YEN CHAM YUNG's credentials were used to access the Chicago Division that day.

39.     On January 23, 2020, law enforcement conducted a search of Residence A. This search was conducted pursuant to written consent provided, on January 20, 2020, by Individual A. According to Individual A, Individual A had temporarily relocated from Residence A prior to the search out of concern for his/her safety. During this search, law enforcement seized approximately seventy-three digital storage disks, specifically CDs/DVDs, some of which contained FBI-related markings. Labels on two of the disks identified the disks as being "U.S. Government Property"

---

[4] According to the CIA classification authority, a redacted copy of this document has been declassified and turned over in response to a FOIA request. The unredacted document retained by YUNG remains classified.

[5] This filename and the title of Document A appear to be identical. Moreover, the Document A was signed by the Director FBI in June 2005, the AG in July 2005, and the Director of CIA in June 2005, which is also consistent with the filename in the FBI computer system.

and SECRET. Five of these disks had labels that identified the disks as being "U.S. Government Property" and UNCLASSIFIED. One of the disks contained evidence tape wrappings and certain markings familiar to the Affiant indicating that the disk contained derivative digital evidence, from an official investigation, as prepared by the Chicago Regional Computer Forensics Laboratory. The Chicago Regional Computer Forensics Laboratory is a facility supported by various partnering law enforcement agencies, to include the FBI, which processes various digital forensic exam requests submitted by law enforcement.

40.    In addition, during the search, law enforcement seized approximately 257 3.5" floppy disks. Of those, approximately twenty-eight disks had labels indicating that the disks were "U.S. Government Property" and UNCLASSIFIED.

41.    Also during the search, law enforcement seized (a) three mobile telephones; (b) two computer hard drives; and (c) two laptop computers, among other items.

42.    On or about March 12, 2020, United States Magistrate Judge Jeffrey I. Cummings, Northern District of Illinois, signed search warrant 20 M 164, which authorized the search of the property recovered on January 23, 2020.

43.    Based on preliminary searches of digital and magnetic media storage devices, as authorized by warrants 19 M 612 and 19 M 655, it is believed that well over one thousand files exist which contain working copies of various document types currently or historically utilized by the FBI, to include but not limited to FD-302

14

forms, investigative inserts, electronic communications, commonly referred to as "ECs", and forms relating to the operation of confidential informants. Currently, FD-302 forms and, historically, FD-302 forms and investigative inserts, were utilized by FBI agents to memorialize certain investigative activities. ECs, currently and historically, are an internal form used for recording information pertaining to a case. With respect to the files identified pursuant to the referenced searches, such files represent various types of FBI documents and contain sensitive information regarding investigative actions, such as interviews, physical surveillances, and undercover operations. Some detail the identities and manner of use of confidential informants. Some of these documents contain sensitive personally identifiable information as well as information derived from administrative and grand jury subpoenas.

44.    In addition, some identified files contained affidavits, transcripts of recorded conversations, requests for investigative funding, and some related to confidential informant payment matters.

45.    Furthermore, additional located files represented performance reviews of FBI agents and supervisors, FBI investigative program reviews as well as documents related to internal FBI inspection matters and internal investigations of FBI personnel.

46.    It is believed that some identified files represent photographs and surveillance videos which were obtained in conjunction with official FBI

investigations, to include investigations being conducted in the Northern District of Illinois. Further, image files depicting child pornography and child erotica were identified as were numerous law enforcement presentations, some of which contained unredacted images of some of the aforementioned child pornography and child erotica.

47.     In summary, law enforcement has identified what is believed to be United States Government materials on approximately fifty digital and magnetic storage devices which were searched pursuant to warrants 19 M 612 and 19 M 655. Approximately five of these devices contain materials marked SECRET. Approximately eleven of these devices contain what is believed to be United States Government material which has been comingled with personal material relating to YEN CHAM YUNG. At present, over three hundred additional storage devices, approximately 36 which are marked U.S. Government Property, have been seized, and review is ongoing, pursuant to warrant 20 M 164.

48.     Based upon my training and experience, it is known that FBI personnel are not permitted to retain government property for their personal use, or to keep government property after leaving the FBI.

49.     The unclassified documents retained by YEN CHAM YUNG were the result of countless hours of labor by FBI personnel. Many of the documents contain personally identifiable information. Finally, during the preliminary search of digital and magnetic media storage devices, as authorized by warrants 19 M 612 and 19 M

655, files comprising internal FBI forms have been identified which relate to payments made to confidential sources operated by agents of the FBI. By way of example, one file related to a payment form, dated September 27, 2000, which identified the drafter as YEN CHAM YUNG. The body of this form listed a payment, in slight excess of $2,000, to be made to a specific FBI confidential source. Further, this form indicated that the respective confidential source previously had been paid approximately $1,000 during the fiscal year of 2000, which would encompass the period of October 1, 1999 through September 30, 2000.[6]

50.     Based upon my training and experience, to include the handling, operation and paying of numerous confidential sources, I know that the recruitment, utilization, retention, payment and protection of confidential sources is an extremely sensitive matter and that confidential human sources provide an immensely valuable role in the successful functioning of law enforcement. Furthermore, I know that the forms related to the recruitment, utilization, retention, payment and protection of confidential sources are extremely sensitive, so much so that access to the same is strictly controlled and compartmentalized within the FBI.

51.     On or about November 7, 2019, Individual A provided to law enforcement certain photographic equipment previously located inside Residence A by Individual A. The equipment received by law enforcement included a Rhino brand

---

[6] The referenced form further reflected that the payment to be made included a specific amount for services and a specific amount for expenses incurred by the confidential source.

camera bag, marked with handwritten identifier, "F1007974", which included (a) a Nikon N90 camera, serial number 2092468; (b) a Nikon AF Nikkor 28-85mm lens, serial number 3065312; (c) a Nikon AF Nikkor 75-300mm lens, serial number 382023; and (d) a Nikon Speedlight Flash SB-28. Based upon my training and experience, to include being assigned to the Chicago Division of the FBI for over twenty-one years, I know that agents and/or squads could check out camera equipment kits from Chicago Division's Photography Laboratory for use during surveillance, crime scene processing, evidence processing and/or for other investigative duties. These kits typically contained a camera, several lenses and a camera flash unit. Further, I know that the Chicago Division routinely utilized Rhino brand camera bags for such purposes and that the identifier, F1007974, represents a unique property designator utilized within the FBI to track assets and to conduct inventories of such assets. Based upon a review of records maintained by Chicago Division's Photography Laboratory, a photographic equipment kit, identified as F1007974, was charged out on or about October 4, 2001, to an investigative squad responsible for handling organized crime matters. At times during YEN CHAM YUNG's assignment to the Chicago Division, between approximately 2005 and 2010, YEN CHAM YUNG supervised an investigative squad responsible for handling organize crime matters. Based upon a review of publicly available information on the Internet and internal FBI records, it is believed that, during the early 2000s, the total value of the referenced camera bag, camera, two lenses and flash unit, was approximately $1,500.

18

52. Based on the foregoing, I respectfully submit that there is probable cause to believe that the value of the unclassified FBI documents, magnetic and electronic media, and photographic equipment unlawfully retained by YEN CHAM YUNG exceeded $1,000.

## III. CONCLUSION

53. Based on the above information, I respectfully submit that there is probable cause to believe that YEN CHAM YUNG retained, without authorization, property of the United States Government, namely, unclassified FBI documents, magnetic and electronic media, and photographic equipment valued in excess of $1,000, with intent to convert it to his own use, knowing it to have been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641, and that YEN CHAM YUNG had unauthorized possession of and willfully retained a document, writing, and note relating to the national defense, namely a memorandum of understanding between two agencies of the U.S. intelligence community ("Document A") in violation of Title 18, United States Code, Section 793(e).

19

FURTHER AFFIANT SAYETH NOT.

*s/David. A. Patch*
David A. Patch
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to
telephonically this 12th day of May, 2020

Honorable Robert M. Dow, Jr.
United States District Judge

20