UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 20 CR 231 |
| | ) | |
| vs. | ) | Honorable Thomas M. Durkin |
| | ) | |
| YEN CHAM YUNG | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO
ADMIT PRIOR REPRIMANDS REGARDING THE
HANDLING AND STORAGE OF CLASSIFIED DOCUMENTS**

Defendant Yen Yung is a former FBI agent charged with unlawfully retaining classified national defense information under Title 18, United States Code, Section 793(e).[1] To sustain a conviction under this charge, the government must prove that defendant retained the information and documents "willfully."[2] At trial the government intends to admit documents and testimony relating to instances where defendant was reprimanded for violating security protocols regarding the proper handling and storage of classified information during his career as an FBI agent. Specifically, the government intends to introduce evidence of: (1) a 2002 report that defendant authored in which he explained his failure to secure a classified computer disk and emphasized his understanding of the security procedures for handling classified materials; (2) a 2014 letter informing defendant of an infraction he received for failing to secure a safe with classified materials inside; (3) a 2015 letter

---

[1] Defendant is also charged with theft of government property, but that charge is not relevant to this motion.

[2] The Government must prove only that the defendant acted with simple willfulness. *U.S. v. Drake*, 818 F. Supp. 2d 909, 916 (D. Md. 2011).

1

suspending defendant's "top secret" security clearance and informing him he had to return any classified information; and (4) a 2016 letter revoking defendant's "top secret" security clearance.

The government does not intend to argue that these past violations of security protocols constitute crimes and will redact any irrelevant or prejudicial portions of the documents. But these reprimands are highly relevant as direct evidence of a key element of the charged crime—willfulness. The government expects defense to argue that defendant's retention of the charged classified documents was accidental, not willful. Evidence of these prior reprimands rebuts this argument and is direct evidence of defendant's knowledge of classification markings and protocol, of the restrictions on the improper retention of classified information, and of the need to secure and return classified materials, and ultimately, his willfulness in illegally retaining such classified material.

These reprimands are admissible as direct evidence of his willfulness but, in the alternative, they are also admissible under Rule 404(b) because they are evidence of knowledge, intent, and absence of mistake.

## I.     Background

Defendant Yen Yung was an FBI agent from 1996 to 2016. During his time with the FBI, defendant worked as an agent in Honolulu, Chicago, and Washington, D.C. Defendant also worked in Colorado Springs, Colorado, as FBI's liaison to the Department of Defense's United States Northern Command and as FBI's Legal Attaché (also known as a "LEGAT") in Jakarta, Indonesia. As an FBI agent, defendant held a top secret security clearance, which allowed him access to sensitive

government materials, including classified documents and materials relating to the national defense that was closely held by the government ("National Defense Information"). Throughout his career with the FBI, defendant received training and repeatedly signed non-disclosure forms in which he acknowledged both the harm that could result from the unauthorized disclosure of classified information and the importance of properly retaining and storing classified information, including information related to national defense.

In 2019, defendant's ex-wife, who, at the time, was separated from defendant, and a friend were searching defendant and his ex-wife's residence for documents related to their separation. Amongst defendant's possessions, his ex-wife recovered several digital storage devices, among other items, many of which appeared to be government property. Over the next several days, defendant's ex-wife provided to the FBI several additional materials recovered from defendant's possessions, including disks, electronic storage devices, and hard copy devices. The FBI searched defendant's residence and recovered additional materials. Some of the materials recovered in defendant's office were marked United States Government property and marked "Secret," including the five documents charged in the indictment, all of which contained classified national defense information.

## II.     Evidence Sought to Be Admitted

At times during his career, defendant was reprimanded for violations of security protocols related to the proper handling and storage of classified documents. At trial, the government intends to admit evidence, in the form of letters defendant received and documents he signed and/or authored, informing him or indicating his

acknowledgement of his violations of security protocols related to classified information and informing him of his obligations not to retain classified information. Each of these reprimands is relevant as direct evidence of defendant's knowledge of the rules regarding classified information and willfulness in illegally retaining the charged classified documents.

### A. Defendant's 2002 Report

In 2002, defendant failed to secure a classified computer disk and wrote a report documenting his knowledge of security procedures for handling classified materials. *See* Ex. A.[3] Defendant wrote that he was "familiar with the security procedures regarding the handling of classified materials" and that "security of all materials, classified or not, is of the utmost importance." *Id.* at 3. Defendant wrote that he had taken "several steps to ensure proper security," including "properly handling and storing computer hard drives and computer disks." *Id.*

### B. Defendant's 2014 Reprimand

In 2014, defendant was reprimanded for failing to secure a safe containing classified materials in the American Embassy in Jakarta, Indonesia. *See* Ex. B1 As a result, the State Department required defendant to sign a "Statement of Understanding" in which he acknowledged that he had been "briefed on the provisions of the Department of State Information Security Program." *See* Ex. B2. He

---

[3] The government will redact certain portions of the documents that may be considered prejudicial or irrelevant. The government will file the redacted versions of the proposed exhibits on the docket with this motion and can provide the unredacted versions to the Court if so requested.

4

also certified that he understood the "ramifications of non-compliance" with the security policies, including "security clearance actions against him." *Id.*

### C. Defendant's 2015 Suspension of Security Clearance

Then, in 2015, defendant's "top secret" security clearance was suspended after he failed to submit the names of foreign contacts as required and failed a polygraph interview.[4] *See* Ex. C1. As part of the suspension, on or about August 20, 2015, defendant signed an FBI security form (Standard Form 312 or "SF-312"). *See* Ex. C2 The SF-312 form contains a Security Debriefing Acknowledgement which is executed when an FBI agent no longer has a security clearance and consequently loses the ability to access and possess classified property of the United States Government. The Security Debriefing Acknowledgement portion of the SF-312 contains the following statement, "I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization." *Id.*

### D. Defendant's 2016 Revocation of Security Clearance

In 2016, defendant had his security clearance fully revoked due to "serious allegations [ ] regarding [his] foreign contacts and [ ] personal conduct."[5] *See* Ex. D. He received a letter informing him that his "security clearance and access to national

---

[4] The government will redact the information about the polygraph test and defendant's foreign contacts.

[5] The government will redact information about defendant's failure to report foreign contacts and his contacts with female foreign contacts despite being married.

5

security information" had been revoked. *Id.* at 2. The letter stated that "retention of access to national security information [by defendant] would constitute an unacceptable risk to national security." *Id.* at 4. Shortly after having his security clearance revoked, he retired from the FBI while under investigation.

### III. Argument

The government moves *in limine* to admit the above-referenced documents relating to defendant's prior violations of security protocols relating to classified information. As demonstrated in the summaries above, these documents are highly relevant as direct evidence of his knowledge of the rules and law regarding classified documents, including information related to national defense and his willfulness in illegally retaining such documents.

Even if not deemed direct evidence, the evidence of defendant's prior security protocol violations and subsequent admonishments and acknowledgements is admissible under Rule 404(b) to establish proof of intent, knowledge, and absence of mistake.

### A. The Materials Are Admissible as Direct Evidence

The Seventh Circuit has consistently held that "direct evidence of a charged offense is almost always admissible against a defendant and does not implicate Rule 404(b)—even when it is also possible to draw a forbidden propensity inference from the evidence. *United States v. Dukes*, 147 F.4th 711, 716 (7th Cir. 2025). Direct evidence refers to evidence of conduct that is "part and parcel of the charged offense." *Id.* at 717. "When evidence is embraced by the [allegations] in the indictment, the

court need not resort to Rule 404(b) analysis." *United States v. Alviar,* 573 F.3d 526, 538 (7th Cir. 2009).

Here, the indictment charges defendant with *knowingly and willfully* retaining classified national defense information materials. At trial, the government anticipates that defendant is likely to argue that the government failed to demonstrate that he acted willfully in retaining the charged classified documents containing national defense information or that he even knew such materials were in his possession. Defendant's history of repeatedly acknowledging the importance of securing classified materials and suffering consequences for failures to properly secure classified materials is direct evidence that he knew the law and willfully retained classified documents in violation of the law. It also directly rebuts any argument that defendant did not recognize that the materials—including documents he printed out and brought home from work—were classified.

In similar situations, where a defendant's willfulness and knowledge is at issue, courts regularly admit as non-404(b) direct evidence of the defendant's prior actions or related conduct that proves knowledge of the law and relevant rules. For example, in *United States v. Andujar*, 209 F. App'x 162, 170 (3d Cir. 2006), the defendant was charged with failure to file tax returns, which included willfulness as an element of the crime. The Third Circuit upheld the government's introduction of defendant's prior tax filing history because it was properly used "to prove willfulness . . . and was relevant to establishing an element of the crime charged." The Court emphasized that the evidence was particularly relevant because the defendant's

7

"defense at trial [was] that he did not willfully, maliciously, or intentionally fail to file his tax returns." *Id.*; *see also United States v. Clements*, 73 F.3d 1330, 1337 (5th Cir. 1996) (upholding admission of testimony about defendant's awareness of his outstanding payroll tax liability as direct evidence of his willfulness).

Similarly, in *United States v. Ellis*, 548 F.3d 539, 542-43 (7th Cir. 2008), the defendant was charged with willful failure to pay taxes. The Seventh Circuit upheld the admission of defendant's personal expenditures because it was probative of willfulness and directly negated the defendant's "principal defense that she was too busy to notice or remember her tax obligations." *Id.* The Court explained that expenditures showing she was traveling to Florida or buying cars rebutted her defense. *Id.* The Court also noted that her expenditures were roughly equal to her unpaid tax liability, which was direct evidence of her knowledge. *Id.* As the Court put it, "most people would inquire as to why they have an unexpected additional two million dollars to spend on themselves." *Id. See also United States v. Lane*, 323 F.3d 568, 579 (7th Cir. 2003) (admitting evidence of defendant's net worth and annual income in case where defendant was charged with making false statements to obtain a loan because it was direct evidence of his knowledge that the statements in his loan applications were false); *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) (admitting evidence of defendant's theft of car because it was "direct evidence" of his false statements about the car being in his garage).

The reasoning *Andujar* and *Ellis* applies here. Like in those cases, willfulness is an element of the charged offense. Like in those cases, here, defendant's primary defense is likely to be that he did not act willfully and merely forgot or failed to notice

the classified documents retained at his home. Like in *Ellis* and *Andujar,* the proffered evidence directly rebuts that argument. In 2002, defendant wrote that he is "familiar with the security procedures regarding the handling of classified materials" and that "security of all materials, classified or not, is of the utmost importance." In 2014, after another violation, he was reminded of the ramifications of non-compliance with the security policies, including "security clearance actions against him." *Id.* Like in the tax fraud cases where the government had to prove the defendants knew about their tax obligations, here the government must prove defendant knew retaining national defense information was unlawful and the government's evidence will show that all of the national defense information defendant retained was classified. These incidents provided direct evidence of his knowledge of classified designations, including information related to national defense, and the requirements for handling such materials.

Defendant's later reprimands are even more relevant. In 2015, defendant lost his top security clearance. This fact alone is highly relevant because losing a security clearance would naturally cause a person to consider what classified documents, including information related to national defense, were in their possession and ensure that they were not in possession of any such materials. But beyond just the loss of his clearance, defendant also had to affirm that he was aware of the "federal criminal laws [ ] applicable to the safeguarding of classified information" and that he had "returned all classified information in [his] custody." Ex. C. This is direct evidence of his knowledge of the illegality of retaining classified material, to include information related to national defense. It also rebuts any argument that he accidentally retained

9

the material and did not realize he had an obligation to ensure that he returned the classified information.

In sum, defendant's prior reprimands are highly relevant direct evidence of willfulness—the primary contested element expected at trial. To the extent this evidence is prejudicial, any prejudice can be mitigated by the government's proposed redactions and by jury instructions from the Court. *See United States v. Jones,* 455 F.3d 800, 809 (7th Cir. 2006) (noting the value of jury instructions "in reducing or eliminating any possible unfair prejudice" from bad act evidence). Even if some prejudicial value remains, the highly probative value of this direct evidence outweighs that prejudice and warrants admission.

## B. The Reprimand Materials Are Alternatively Admissible Under Rule 404(b)

The evidence regarding defendant's prior reprimands for violating classified information protocols and his acknowledgements of his obligations regarding classified information are alternatively admissible under Rule 404(b). Generally, other bad acts evidence is inadmissible for propensity purposes, but such evidence may be admitted to establish "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Leahy,* 464 F.3d 773, 797 (7th Cir. 2006). In determining whether evidence is admissible pursuant to 404(b), "the proponent must show … that the evidence is relevant for a reason other than propensity" and that the probative value outweighs the prejudicial effect of the evidence. *United States v. Thomas*, 986 F.3d 723, 728 (7th Cir. 2021).

10

Under this standard, for largely the same reasons discussed above, the evidence of his prior reprimands and his subsequent acknowledgements about the security protocols for classified documents is admissible. This evidence is relevant regardless of propensity because it proves his willfulness in retaining classified documents, including national defense information, and knowledge that it was against the law. Importantly, this evidence is also directly responsive to a defense theory that defendant retained the documents accidentally or through carelessness. On the contrary, this evidence shows that defendant repeatedly acknowledged that he understood the importance of properly securing classified documents. This rebuts carelessness. And then, when his security clearance was suspended, this evidence shows he specifically acknowledged his obligation to return any classified documents he possessed. Again, this rebuts carelessness and mistake. An argument that defendant accidentally retained classified national defense information in his home is undercut by his specific warnings about the rules relating to classified material and his explicit acknowledgement that he was required to return such material.

The Seventh Circuit has repeatedly upheld the admission of similar evidence of prior uncharged misconduct, especially in tax fraud cases where, like here, willfulness is at issue. In *United States v. Ellis*, 548 F.3d 539, 543-44 (7th Cir. 2008), as discussed above, the defendant was charged with willful failure to pay taxes. At trial, the court admitted evidence of defendant's other uncharged failures to pay earlier taxes because it was relevant to show that defendant "fully understood" that she was withholding taxes, that she was "legally responsible for filing the returns and depositing the money with the IRS," and that the charged violations were "part of a

11

larger disregard for federal tax obligations that a jury could find was willful." *Id.* at 543. The Seventh Circuit upheld the admission of the evidence under 404(b), holding that defendant's prior failures to pay taxes were "relevant to negate [her] defense of forgetfulness and show that she acted willfully; that is [she] was aware of her duties to account for and pay her taxes and disregarded those duties by failing to do so." *Id. See also United States v. McCaffrey,* 181 F.3d 854 (7th Cir.1999) (same admitting uncharged failures to pay taxes as relevant to willfulness and "pattern of conduct relevant to intent"); *see also United States v. Douglas*, 482 F.3d 591, 597 (2007) (upholding admission of evidence of defendant's prior possession and distribution of crack cocaine because it was relevant to show "that he knew the nature of the substance," "and that he intended to distribute it.").

Here, like in *Ellis* and *Douglas*, evidence of the defendant's prior statements regarding the proper handling of classified information and the documents he signed and reviewed regarding the importance of securing classified information demonstrate his knowledge of classified material, including how to read classified markings, and how to properly handle classified material. His 2015 and 2016 suspension and revocation of his security clearance again show his knowledge that retaining classified materials was against the law. As the D.C. Circuit Court held, "[i]t hardly can be denied that in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." *United States v. Long*, 328 F.3d 655, 663 (D.C. Cir. 2003) (internal quotation marks and citations omitted). Here, the fact that defendant had his security

12

clearances revoked and had been informed that he had to return any classified materials just a few years before the classified documents were found at his home is highly relevant to his knowledge and intent.

Evidence of the defendant's prior improper retention of classified materials is also probative of the fact that, in contrast to a lay citizen or law enforcement agent who did not work with sensitive materials, defendant specifically knew what classified information was, would recognize it by its markings, and would understand that such material could not be removed from secure locations. *See*, *e.g.*, *United States v. Brown*, 597 F.3d 399, 402, 405 (D.C. Cir. 2009) (evidence of defendant's previous attempts to use fictitious documents to obtain items of value relevant under Rule 404(b) to show defendant's intent, knowledge, motive, and absence of mistake or accident; and to rebut defendant's claim that he acted in good faith in attempting to deposit fraudulent bills at a credit union); *United States v. Aleskerova*, 300 F.3d 286, 295 (2d Cir. 2002) (trial court did not err by admitting evidence of defendant's prior possession of stolen artwork, to show defendant's intent and plan to receive, possess and conceal stolen items, in case charging possession of stolen artwork).

As discussed above, this evidence is highly relevant in particular because it rebuts a defense argument that he retained the classified materials by mistake. Any prejudicial value can be limited by jury instructions and redactions, and the significant probative value thus outweighs the limited potential for prejudice. *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) (admitting evidence of prior drug convictions in drug prosecution because it was probative of knowledge and the "more

13

probative the evidence, the more the court will tolerate some risk of prejudice," given that "most relevant evidence is, by its very nature, prejudicial.").

## CONCLUSION

For the foregoing reasons, the government seeks the introduction of certain evidence of prior reprimands for which defendant acknowledged the importance of securing classified information.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: _/s/ Elie Zenner_
Elie Zenner
Shawn McCarthy
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Kate Tagert
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave.
Washington, D.C.

Dated: May 22, 2026

14