FILED

SEP 02 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YEN CHAM YUNG | No. 20 CR 231<br><br>Judge Thomas M. Durkin |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant YEN CHAM YUNG, and his attorneys, MATTHEW J. McQUAID and JOSHUA G. HERMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rules 11(c)(1)(B) and (C), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2. The information in this case charges defendant with the unlawful retaining of government property, in violation of Title 18, United States Code, Section 641 (Counts 1-3).

3. Defendant has read the charges against him contained in the superseding information, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the superseding information, which charges defendant with the unlawful retaining of government property, in violation of Title 18, United States Code, Section 641 (Counts 1-3). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1, 2, and 3 of the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

**a. Count One**

Beginning no later than in or around June 2005, and continuing until at least in or around January 2010, at Chicago, Illinois, in the Northern District of Illinois, and elsewhere, defendant did knowingly retain property of the United States Government, namely, a Rhino Camera Bag bearing serial number F1007974, a Nikon N90 AF Black 35mm SLR Camera Body bearing serial number 2092468, a Nikon AF Nikkor 73-300mm lens bearing serial number 382023, a Nikon AF Nikkor 28-85mm lens bearing serial number 3065312, and a Nikon World Time Date Back bearing

serial number 204026, with intent to convert it to his own use, knowing the property had been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641.

More specifically, between June 2005 and January 2010, defendant was an Federal Bureau of Investigation (FBI) Supervisory Special Agent in the Chicago Field Office. During that time, government property, namely, FBI camera equipment, including a Rhino Camera Bag bearing serial number F1007974, a Nikon N90 AF Black 35mm SLR Camera Body bearing serial number 2092468, a Nikon AF Nikkor 73-300mm lens bearing serial number 382023, a Nikon AF Nikkor 28-85mm lens bearing serial number 3065312, and a Nikon World Time Date Back bearing serial number 204026 were assigned to defendant's squad at the FBI Chicago Field Office. In or around February 2010, defendant was reassigned as FBI's liaison to the Department of Defense's United States Northern Command located in Colorado Springs and took the Rhino Camera Bag, Nikon N90 AF Black 35mm SLR Camera Body, Nikon AF Nikkor 73-300mm lens, Nikon AF Nikkor 28-85mm lens, and Nikon World Time Date Back with him when he left the Chicago Field Office. When defendant retired from the FBI in 2016, he retained the property described above for his own personal use. Defendant knew that he was not authorized to retain the property described above and that in doing so, he knowingly converted it for his personal use.

**b. Count Two**

Beginning no later than June in or around 2005, and continuing to at least in or around January 2010, at Chicago, Illinois, in the Northern District of Illinois, and elsewhere, defendant did knowingly retain property of the United States Government, namely, a BlackBerry 7520 cellphone bearing IMEI 010000424477190, with intent to convert it to his own use, knowing the property had been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641.

More specifically, between June 2005 and January 2010, defendant was an FBI Supervisory Special Agent in the Chicago Field Office. During that time, government property, namely, a BlackBerry 7520 cellphone bearing IMEI 010000424477190 (the "BlackBerry 7520"), was assigned to FBI Special Agent 1 who was a Special Agent in the Chicago Field Office but was never assigned to defendant's squad. At some point between June 2005 and January 2010, FBI Special Agent 1 returned the BlackBerry 7520 to the FBI as part of an FBI cellphone upgrade program. After FBI Special Agent 1 returned the BlackBerry 7520 to the FBI, defendant took possession of it without the authorization of the FBI. At the time, defendant knew that he was not authorized to possess or retain the BlackBerry 7520. Defendant took the BlackBerry 7520 for his own use. In or around 2016, defendant retired from the FBI and continued to retain the BlackBerry 7520 for his own use, knowing that it had been converted from the FBI.

c. **Count Three**

On or about August 3, 2016, at Colorado Springs, Colorado, in the District of Colorado, and elsewhere, defendant did knowingly retain property of the United States Government, namely, a BlackBerry Bold 9930 cellphone bearing IMEI 355618056350978, with intent to convert it to his own use, knowing the property had been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641.

More specifically, in February 2015, defendant was assigned as a Supervisory Special Agent at FBI headquarters office and issued a BlackBerry Bold 9930 cellphone bearing IMEI 355618056350978 (the "Blackberry Bold 9930"). On or about April 27, 2016, defendant was indefinitely suspended from the FBI and in or about July 2016, defendant notified the FBI of his intention to retire. On or about August 3, 2016, defendant signed form FBI FD193 Report of Exit and Separation from FBI employment. In signing FD-193 defendant acknowledged that he was prohibited from retaining government property issued to him while he was an employee of the FBI. Defendant further affirmed that he returned all government property what was in his custody as an FBI employee. However, defendant knew at the time that he had not returned to the FBI the BlackBerry Bold 9930 issued to him. Defendant knew that he was not authorized to keep the BlackBerry Bold 9930 and continued to retain it for his own use. Defendant knew that he was not authorized to retain the BlackBerry Bold 9930 and that in doing so, he converted it for his personal use.

7. Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense:

Beginning no later than on or about August 27, 1996, and continuing to on or about September 5, 2019, at Colorado Springs, in the District of Colorado, and elsewhere, defendant, being an employee of the United States, and by virtue of his employment, became possessed of documents and material containing classified information of the United States, did unlawfully and knowingly remove such documents and materials without authority and with the intent to retain such documents and materials without authority and with the intent to retain such documents and materials at unauthorized locations at his personal residences in Colorado, aware that these locations were unauthorized for the storage and retention of such classified documents and materials when he was not physically present, in violation of Title 18, United States Code, Section 1924 (the "Stipulated Offense").

More specifically, on or about April 14, 1996, defendant began employment as a Special Agent with the FBI. At various times, he was assigned to FBI offices located in Chicago, Illinois, Honolulu, Hawaii, and Washington, D.C. In addition, defendant, at times, was assigned as the FBI's liaison to the Department of Defense's United States Northern Command located in Colorado Springs and legal attaché in Jakarta, Indonesia. During defendant's employment with the FBI, he obtained a Top Secret clearance and maintained access to Sensitive Compartmented Information ("SCI"). Because of his employment with the FBI and his clearance, defendant had access to

sensitive government materials, including information relating to the national defense that was closely held by the government ("National Defense Information") and classified documents and materials.

As a prerequisite to his access to classified information, defendant signed numerous non-disclosure forms in which he acknowledged both the harm that could result from the unauthorized disclosure of classified information and the applicability of criminal sanctions should he retain national defense information.

On or about August 6, 2015, defendant's security clearances were suspended and on or about August 20, 2015, defendant signed an FBI security form (Standard Form 312 or "SF-312"), which was a classified information nondisclosure agreement. Employees of the United States Government, including FBI employees, were required to sign an SF-312 when they no longer held a security clearance and, as a result, were prohibited from having access to or possessing classified information belonging to the United States Government, including classified National Defense Information. The Security Debriefing Acknowledgement portion of the SF-312 that defendant read and signed contained the following statement, "I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any

attempt by an unauthorized person to solicit classified information, and that I (have)(have not)(strike out inappropriate word or words) received a security debriefing." Accordingly, defendant knew that he did not have authority to be in possession of any classified information after August 20, 2015. On or about March 4, 2016, defendant's security clearances were revoked.

Between August 2019 and January 2020, FBI recovered United States Government property, including at least sixty-nine documents containing Secret Information, some of which contained National Defense Information, which defendant had stored at his residence in Colorado Springs. More specifically, the defendant had the following United States Government property in his residence: one hundred and forty-one floppy discs, sixty-six CD/DVDs, sixteen thumb drives, seven video cassettes, an SD card, a LED visor light system marked "FBI", a power inverter, three United States Government Identification cards, and two credit cards in defendant's undercover alias name along with seven thousand unclassified documents.

Defendant knew that he was not authorized to retain any of the classified materials and property described above, many of which contained National Defense Information, in his personal residence even while he was employed by the FBI. Defendant also knew that he was not authorized to retain the classified materials, including the including the National Defense Information, after he ended his employment with the FBI. Defendant knew he unlawfully possessed the classified

materials described above, including the National Defense Information, that he had failed to return such materials to the FBI as required, and that he retained them in his personal residence after ending his employment with the FBI.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Counts 1, 2, and 3 of the superseding information each carry a maximum sentence of 1 year imprisonment and a maximum fine of $100,000. Defendant further understands that with respect to each of Counts 1, 2, and 3, the judge also may impose a term of supervised release of not more than one year.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $25 on each count to which he has pled guilty, in addition to any other penalty imposed.

d. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 3 years' imprisonment. In addition, defendant is subject to a total maximum fine of $300,000, a period of supervised release, and special assessments totaling $75, in addition to any restitution ordered by the Court.

**Sentencing Guidelines Calculations**

9. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 1, 2025 Guidelines Manual.

b. **Offense Level Calculations.**

**Offenses of Conviction**

i. The base offense level for each of Counts 1, 2, and 3 is 6, pursuant to Guideline § 2B1.1.

**Stipulated Offense**

ii. The base offense level for the Stipulated Offense is 24, pursuant to Guideline §§ 2X5.1 and 2M3.3.

**Grouping**

iii. Pursuant to Guideline §§ 3D1.1, 3D1.2, and 3D1.4, the offense levels for the offenses of conviction and the Stipulated Offense do not group and defendant's combined offense level is 24.

iv. The government understands that defendant will truthfully admit the conduct comprising the offense(s) of conviction, and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

vi. Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A, and otherwise meets the criteria set forth in Guideline § 4C1.1(a). Therefore, the offense level is decreased by 2 levels.

vii. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

c. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the government anticipates the offense level to be 19 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing

guidelines range of 30-36 months' imprisonment, pursuant to Guideline § 5G1.1, in addition to any supervised release, fine, and restitution the Court may impose.

d. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and based on facts known to the parties as of the time of this agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11. Both parties expressly acknowledge that while none of the guidelines calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain components of those calculations- specifically, those set forth above in subparagraph 10(b) are binding on the parties, and it shall be a breach of this Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraph. Defendant understands that, with the exception of the guidelines provisions identified above as binding on the parties, the guidelines calculations set forth in this Agreement are preliminary in nature, are non-binding predictions upon which neither party is entitled to rely, and are not governed by Fed.

R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the sentencing guidelines, other than those identified above as binding, may be corrected by either party prior to the sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

12. This Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of not less than 6 months. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full

restitution to the Federal Bureau of Investigation in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $75 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named recipient(s) of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

17. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the indictment as to defendant.

**Forfeiture**

18. Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds traceable to the offense.

19. Defendant agrees to forfeiture of the specific property identified for forfeiture in the superseding information. In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the offense, as alleged in the superseding information. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

20. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

21. Defendant agrees to waive and abandon any right, title, or interest he has in the property identified in Attachment A. Defendant understands that

abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

22. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 231.

24. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

25. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii. With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine

whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

c. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

26. Defendant understands that he has the right to have the criminal charges in the superseding information brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the superseding information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the superseding information were brought.

27. Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charges against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

**Presentence Investigation Report/Post-Sentence Supervision**

28. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately,

including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

29. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

30. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced.

Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

31. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**Conclusion**

33. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

34. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this

Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions related to case 20 CR 231 that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

35. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 09-02-2026

/s/ Andrew S. Boutros by CKV
ANDREW S. BOUTROS
United States Attorney

SHAWN McCARTHY
Assistant U.S. Attorney

YEN CHAM YUNG
Defendant

JOSHUA G. HERMAN
Attorney for Defendant

ELIE ZENNER
Assistant U.S. Attorney

MATTHEW J. McQUAID
Attorney for Defendant

# ATTACHMENT A

The property was collected by the FBI between September 5, 2019, and August 15, 2024, and is further described below:

| FBI Item # | Description |
|---|---|
| 1B2 | Miscellaneous documents and FBI/police materials, to include parking placards, collected on 09/07/2019. |
| 1B4 | Miscellaneous documents collected on 09/07/2019. |
| 1B5 | Bank of Artha Graha Letter of Authorization book, account number 1075094163. |
| 1B6 | Re-closeable plastic bag. |
| 1B7 | Black n' Red notebook. |
| 1B8 | Computer Disk, white colored, with label "Federal Bureau of Investigation", "LAW ENFORCEMENT SENSITIVE". |
| 1B9 | Lock picking set in zippered leather container marked PRO-LOK Quality Tools PKX-20. |
| 1B10 | Computer Disk, white colored, with label "UNCLASSIFIED U.S. Government Property". |
| 1B11 | Computer Disk, white colored, printed with "UNCLASSIFIED U.S. Government Property". |
| 1B12 | Black n' Red notebook with sticker, "Yen Kasih", containing handwritten notes and loose documents. |
| 1B13 | United States Government Identification Card (chip format); DoD ID Number 1388343288, issued to Yen C. Yung. |
| 1B14 | Miscellaneous documents collected on 09/07/2019. |
| 1B15 | First Hawaiian Bank MasterCard, issued to [redacted]. Exxon Fleet Card, issued to [redacted] |
| 1B16 | Computer Disk, silver colored, in case with clear cover with affixed label "UNCLASSIFIED U.S. Government Property". |
| 1B17 | FD-993, Courier Authorization Certificate, issued to Yen C. Yung. |
| 1B18 | Miscellaneous documents collected on 09/07/2019. |
| 1B19 | US Airforce Base Automated Entry Control Card issued to Yen C. Yung, marked property of the U.S. Government. |
| 1B20 | USB Thumb Drive, PNY Optima Attache, dark grey colored, with label attached "SECRET U.S. Government Property". |
| 1B21 | Miscellaneous classified documents collected on 09/07/2019. |
| 1B22 | 700 MB CD, silver colored, with label "SECRET U.S. Government Property". |
| 1B23 | Stack of Business Cards |
| 1B24 | Computer Disk, printed with FBI Seal. |

| | |
|---|---|
| 1B25 | Computer Disk, white colored, printed with FBI Seal, in sleeve with label "UNCLASSIFIED U.S. Government Property". |
| 1B26 | Computer Disk, green colored, printed with "UNCLASSIFIED U.S. Government Property". |
| 1B27 | Computer Disk, white colored, with label "UNCLASSIFIED U.S. Government Property". |
| 1B28 | 3.5 Floppy Disk, Imation High Density, 7223522ND, black colored, with label "UNCLASSIFIED U.S. Government Property". |
| 1B29 | 3.5 Floppy Disk, Maxell MF 2HD, 2590004, black colored, with label "UNCLASSIFIED U.S. Government Property". |
| 1B30 | 3.5 Floppy Disk, Sony Maxell, S2AY6072, blue colored, with label "UNCLASSIFIED U.S. Government Property". |
| 1B31 | 3.5 Floppy Disk, Maxell MF 2HD, black colored, with label "UNCLASSIFIED U.S. Government Property". |
| 1B32 | 3.5 Floppy Disk, Verbatim Datalife MF 2HD IBM Format, D6148562A6, red colored, with label "UNCLASSIFIED U.S. Government Property". |
| 1B33 | 512M USB Thumb Drive PNY Technologies Attache, grey colored. |
| 1B34 | U.S. one dollar bill with handwritten Chinese characters. |
| 1B36 | NAVY FEDERAL CREDIT UNION checkbook, Candice D. Yung and Yen C. Yung, account number 0709118715. |
| 1B37 | Two handgun holsters. |
| 1B38 | 4GB USB Thumb Drive A.E.C. U-567, green colored, marked "UNCLASSIFIED U.S. Government Property". |
| 1B39 | [redacted] loose papers. |
| 1B40 | Handgun magazine, .380 caliber, single stack. |
| 1B41 | Miscellaneous paper effects/band-aids collected on 09/05/2019. |
| 1B42 | USB Thumb Drive, Rhode&Schwarz, silver and black colored, in hard plastic container with 8GB sticker. |
| 1B43 | 1GB USB Thumb Drive, Memorex Traveldrive, silver colored. |
| 1B44 | 16G USB Thumb Drive, PNY, white and black colored, with letters "JCLEC" handwritten on it. |
| 1B47 | 2GB USB Thumb Drive, BARCODE, red colored. |
| 1B48 | 512MB XD Card, FUJIFILM, K26977SKM30721MAD. |
| 1B49 | Samsung Cellular Telephone, IMEI 357325/07/018578/0; IMEI 357326/07/018578/8, SN: RR8H30A0R6W, black colored, in hard case. |
| 1B50 | 1 GB SD Card, SanDisk, BB0633404897B. |
| 1B51 | Floppy Disk, BASF 2HD DOS Formatted, black colored, with printed label - IRS/CID. |
| 1B52 | 2GB Micro SD Card, MM8GR02GUACY-NA, F2630000 810 inside of MicroSD Adapter, PNY. |
| 1B53 | 1G USB Thumb Drive PNY Technologies Attache, grey colored. |

| | |
|---|---|
| 1B54 | FujiFilm Finepix Digital Camera, 1NB62175 with 4GB SD Card, FujiFilm, BH1129321915G, and soft camera case. |
| 1B55 | 512 MB Compact Flash Drive, SanDisk, red dot on back. |
| 1B56 | USB Thumb Drive, PNY, black-colored with "unclass" handwritten on a yellow sticky-note taped to the device. |
| 1B57 | 8GB USB Thumb Drive, SanDisk Cruzer Blade, B1150124139B, red colored. |
| 1B58 | USB Thumb Drive Card, AG Network, card with "Sudirman Central Business District, www.scbd.com" printed on it. |
| 1B59 | 32GB USB Thumb Drive, Kingston DT101 G2, purple and silver colored. |
| 1B60 | 16G USB Thumb Drive, PNY, white and black colored, with handwritten "M". |
| 1B61 | 4BG USB Thumb Drive, Kingston DataTraveler, KF5714821, White colored, gold colored sticker with "ZS 2014". |
| 1B62 | 32GB USB Thumb Drive, SanDisk Cruzer Blade, BM180125882B, red colored, letters "yy" handwritten. |
| 1B63 | 4GB USB Thumb Drive, Jakarta Centre for Law Enforcement Cooperation, 0113 01036526, white colored. |
| 1B64 | 8GB USB Thumb Drive, HP v250w, silver colored. |
| 1B65 | 512 MB SD Card, SanDisk, AX0410WV. |
| 1B66 | 8GB USB Thumb Drive, HP V 270W, white and yellow colored, on small chain. |
| 1B67 | Miscellaneous plastic container, soap, cigar and cigar case. |
| 1B68 | 32GB USB Thumb Drive, SanDisk Cruzer Glide, BM1212240908, Black colored. |
| 1B69 | USB Thumb Drive, Dane Elec, grey colored. |
| 1B70 | USB Thumb Drive CTP Chicago Technology Park, orange colored, on key chain. |
| 1B71 | 16GB USB Thumb Drive, SanDisk Cruzer Glide, BL120723778N, Black colored. |
| 1B72 | 4G USB Thumb Drive, PNY Optima Pro Attache, dark grey colored. |
| 1B73 | USB Thumb Drive, L3, GCS-3Di, dark blue colored, in plastic cellophane. |
| 1B76 | Seven .380 caliber cartridges |
| 1B77 | Notebook with inscription "BUKU PASIEN". |
| 1B79 | 8GB USB Thumb Drive, SanDisk, model type worn off, D33724, black colored. |
| 1B80 | 4GB USB Thumb Drive, Kingston DataTraveler, KF5714821, White colored, gold colored sticker with "ZS 2014". |
| 1B82 | 64 MB Micro SD Card, KINGMAX, T064S6DAH 716A114, and MicroSD Adapter, "neElec", TN3DSC5PYXNSU29. |
| 1B83 | 2GB SanDisk Micro SD Card, 2494CBCFH2Y4 BE, inside Micro SD Adapter, LG. |
| 1B84 | Miscellaneous documents collected on 09/08/2019. |
| 1B85 | Miscellaneous documents with classification markings collected on 09/08/2019. |
| 1B86 | Miscellaneous classified documents collected on 09/08/2019. |
| 1B88 | Miscellaneous documents with classification markings collected on 09/14/2019. |

| | |
|---|---|
| 1B89 | Miscellaneous documents collected 09/14/2019, a red TJ Maxx fabric bag, and a green Pet City Colorado bag. |
| 1B91 | One Sound Off Signal LED Visor Light, Generation 3, Red/Blue in a white box with handwritten "FBI". |
| 1B92 | Thirteen (13) VHS tapes, seventeen (17) floppy disks and one (1) Canon disk in a reusable bag. |
| 1B93 | Samsung Cellular Telephone, model number: SPH-A460, identification number 08111344002 (partially obscured by sticker), SN: ZA2TA02FS/-2 located on removable 3.7V Standard Battery, silver colored with red, white and blue sticker/decal on the front of the telephone, and a red label with white colored number 703-371-9682 located on the outside of the removable battery. |
| 1B94 | Samsung Cellular Telephone, model number: SPH-A460, identification number 08111220442, SN: ZA2T830C1/-2 located on removable 3.7V Standard Battery, silver colored with a red label with white colored number 703-798-7790 located on the outside of the removable battery. |
| 1B95 | Samsung Cellular Telephone, model number: SPH-M520, identification number A1000008F4D289, silver and black colored. |
| 1B96 | Motorola Cellular Telephone, IMEI: 000103569623490, SN: 364VFA5JVT, silver colored with removable gray case. |
| 1B97 | Motorola Cellular Telephone without battery, IMEI: 000101633119310, SN: 919YDE1N2J, black colored with removable black case. |
| 1B98 | Palm m515 electronic device with detachable keyboard, identification number: 00TAPAH2A14W, gray colored with white label "YEN C. YUNG" affixed. |
| 1B101 | Barnes & Noble Nook with maroon colored case and Quick Start Guide, model number BNRV200, identification number 8961A-BNRV200A, SN: 2010520004312000, black and gray colored, with 2GB Micro SD card, identification number: 1046CF1267F. |
| 1B102 | Compaq Presario CQ60 laptop computer, SN: 2CE9034CMV, black and silver colored. |
| 1B103 | Apple 16GB iPad tablet, SN: DR5HPW9JDKPH, silver, white and black colored. |
| 1B104 | Acer Aspire One 722 laptop computer, SN: LUSFT020021231440F1601, black colored. |
| 1B105 | Nokia Cellular Telephone, IMEI: 352421/05/120807/4, black and gray colored. |
| 1B106 | BlackBerry Cellular Telephone, IMEI: 364730055013678, white, gray and silver colored. |
| 1B107 | LG Cellular Telephone, IMEI: 013948-00-947038-1, S/N: 412CQRN947038, black and gray colored. |
| 1B108 | LG Cellular Telephone, S/N: 012KPDT0620834, purple and black colored, with 4GB SanDisk micro SD card, identification number 4447CN815049. |
| 1B109 | Nokia Cellular Telephone, IMEI: 355216038582717, gray colored. |
| 1B111 | Compact disc with blue, white and black printed label marked, "FBI Training Handouts". |

| | |
|---|---|
| 1B112 | Silver colored 700MB Verbatim compact disc with handwritten, "DISTRICT 8 FLOOR PLAN 2017" on the front of the disc. |
| 1B113 | Beige colored floppy disk, identification number: 09AB2315A, with a green sticker labeled "UNCLASSIFIED U.S. Government Property". |
| 1B114 | BlackBerry Cellular Telephone, identification number: L6ARDU70CW, black and silver colored with a black case. |
| 1B116 | Silver and black colored USB thumb drive attached to a magnetic case and marked, "www.discoverykartikaplaza.com". |
| 1B117 | 2GB SanDisk Micro SD Card, identification number: 1132207812CANQ, and SanDisk Adapter, in clear plastic container with handwritten notations "JK BB SD-CD". |
| 1B118 | USB thumb drive within a plastic card depicting buildings and marked, "AG Network", located inside container with "SCBD" marking. |
| 1B119 | USB thumb drive within a plastic card depicting buildings and marked, "AG Network", located inside black box marked "SIGNATURE TOWER". |
| 1B120 | Gold colored 74 Minute Verbatim compact disc with handwritten notation, "YEN YONG'S DOCUMENTS". |
| 1B122 | One camera bag, blue colored, with "CPC Combined Products Corp" printed on it. Inside is one Nikon "Nice Touch Zoom" 5114512 with "Nikon Lens 35-60mm Macro" printed on it, one camera flash "Zoom Thyristor 265", also various camera accessories to include lenses and manuals. |
| 1B123 | Bag containing various cables, colognes, USB adapters, and miscellaneous items. |
| 1B124 | Clear container containing approximately 60 computer discs. |
| 1B125 | Clear container containing miscellaneous items, to include voice recorder, cigars, handcuffs, and cables. |
| 1B126 | Clear container labeled "YEN: WORK" containing approximately 25 micro cassettes. |
| 1B127 | Clear container containing approximately 48 cassette tapes. |
| 1B128 | Two Maxell Mini DV DVCassettes. |
| 1B129 | One VHS C, black colored, G281DN17W1 TC-30HGXB. |
| 1B132 | One Motorola mobile telephone, model: XT1607, IMEI: 354140073179653, with SIM card and 32GB Sandisk memory card, inside purple case. |
| 1B133 | Miscellaneous documents from inside Yung's United States passport (blue). |
| 1B134 | One United States Diplomatic passport (black - holed punched), [redacted], issued to Yen Cham YUNG. |
| 1B135 | One 8mm Video Cassette Sony MP120 with written "8/7/99 Surv. Chinatown". |
| 1B139 | Credit cards- AGI BANK, expiration 7/23; NAVY FEDERAL CREDIT UNION, expiration 6/19 |

| | |
|---|---|
| 1B143 | 1) One pair of black Bushnell Ensign insta focus binoculars, serial number X81667, in a black Bushnell velcro bag containing a yellow cleaning cloth.<br>2) One black Sibir Optics monocular spotting scope 20-50 x 50 mm in a black storage bag.<br>3) One black zippered nylon bag with a purple/orange carabiner clip containing a Derma-Safe utility folding razor, black rope with a blue carabiner clip, potable aqua water purification tablets, platypus water bag, one package containing a cyalume lightstick, one package of oral rehydration salts, one Suunto compass, one orange mylar blanket, one Frontier Pro ultra-light multi-use water filter, two plastic ziplock bags, four small black zip ties, one tube of NDUR USA survival matches, four cotton tabs, one metal match, one hacksaw blade, and two fast fire packets<br>4) One ASP tactical mirror & case<br>5) One brown paper package containing cheesecloth<br>6) One Lock Masters lock pick set in a black case.<br>7) One ASP clip handcuff key in original packaging<br>8) One ASP G2 logo handcuff key in original packaging<br>9) One pair of silver Peerless handcuffs, serial number 003260, in a black velcro case<br>10) One business card holder containing business cards<br>11) One Samsung phone battery, serial number AA1FA05SS/2-B, and a black Blackberry polishing cloth<br>12) One black Coca-Cola Amatil Indonesia drawstring bag containing one Galls mini phantom model DL171 undercover interior mini LED light and instruction book.<br>13) Two black Safariland double magazine holder (Glock 17/22)<br>14) One black Safariland single magazine holder (Glock 17/22)<br>15) One black FBI badge mount - belt clip<br>16) One blue cloth double magazine holder<br>17) Five silver handcuff keys on a chain connected to a small black baton<br>18) One black Uncle Mike's handcuff holder containing a pair of silver Peerless handcuffs, serial number 307589<br>19) Remington choke key wrapped in brown paper<br>20) One ziplock bag containing seven (7) FBI velcro placards of various sizes & colors, five (5) FBI armbands, two (2) velcro patches with the FBI seal and one business card for SSA Yen C. Yung, NORAD & USNORTHCOM.<br>21) One wooden stir stick |

| | |
|---|---|
| 1B144 | (U) One black American Rhino camera case with serial number F1007974 written in white inside of the two side pockets, containing:<br>1) One black Nikon N-90 camera, serial number 2092468. With Date Back with serial number 204026.<br>2) One black Nikon AF Nikkor 28-85mm lens, serial number 3065312 which is attached to the camera.<br>3) One black Nikon AF Nikkor 75-300mm lens, serial number 382023.<br>4) One black Nikon speedlight SB-28 flash with black drawstring bag.<br>5) One black Nikon lens cap<br>6) One black film canister cap<br>7) One black velcro strap<br>8) Camera instruction sheet |
| 1B145 | One black "GALLS" bag containing: various medical kit items, thermal bivvy, and 300 PROWATT power inverter, B11222532 with label "RETURN TO ET SHOP". |
| 1B146 | Miscellaneous documents and receipts collected on 11/07/2019. |
| 1B147 | One DVD labeled, marked UNCLASSIFIED and FOR OFFICIAL USE ONLY. |
| 1B148 | United States of America Official Passport (red - hole punched), [redacted], issued to YUNG Yen Cham. |
| 1B149 | Miscellaneous documents collected on 11/07/2019. |
| 1B151 | Miscellaneous FBI documents collected on 01/22/2020. |
| 1B152 | Silver DELL Inspiron 8500 laptop computer, Model No. PPO2X. |
| 1B153 | Silver and blue colored DELL Inspiron 1100 laptop computer, Model No. PP07L. |
| 1B154 | WESTERN DIGITAL Hard Drive, S/N: WMAJD1543422. |
| 1B155 | SEAGATE Barracuda ATA IV Hard Drive, Model: ST340016A, S/N: 3HSCLX95. |
| 1B156 | Black colored SAMSUNG mobile telephone, S/N: R3ZK865031K. |
| 1B157 | Purple colored SAMSUNG mobile telephone, Model: SPH-M540, with 2GB micro SD card, MM8GR02GUACY-NA. |
| 1B158 | Dark colored BLACKBERRY 7520 mobile telephone, IMEI: 010000424477190. |
| 1B159 | Manual marked "FOR OFFICIAL USE ONLY". |
| 1B160 | (U) FBI credentials, no photo, credential number: HN-3280-02. |
| 1B161 | Red label marked "SECRET" and "U.S. Government Property". |
| 1B162 | Compact disc labeled H:\CYUNG with red sticker marked "SECRET" and "U.S. Government Property". |
| 1B163 | One DVD. |
| 1B164 | Approximately 28 3.5" Floppy Disks, with label "UNCLASSIFIED U.S. Government Property". |
| 1B165 | Approximately 229 3.5" Floppy Disks. |
| 1B166 | Viking Compact Disk, 700 MB, with "SECRET U.S. Government Property" sticker. |
| 1B167 | Compact Disk marked "For Official Use Only", "RCFL Chicago". |
| 1B168 | Approximately 13 CDs/DVDs. |
| 1B169 | 7 CDs with FBI/US Government markings. |
| 1B170 | Approximately 49 CD/DVDs, some of which contain FBI markings. |

| | |
|---|---|
| 1B183 | Miscellaneous documents, including passport and visa applications, collected on 08/15/2024. |
| 1B184 | A roll of Superia 800-36 800/30 film, extracted from the Nikon N-90 camera maintained as Evidentiary Exhibit 1B144. |
| DN 1B3 | FBI retired credentials. |
| DN 1B7 | Wallet containing FBI identification card, Indonesia license, Blue Cross insurance card, players card, and miscellaneous papers. |